Betty J. PHILLIPS, Plaintiff–Appellant,

v.

The STATE BOARD OF REGENTS OF the STATE UNIVERSITY AND COMMUNITY COLLEGE SYSTEM OF the STATE OF TENNESSEE; Shelby State Community College; The State of Tennessee; Thomas J. Garland in his Official Capacity as Chancellor of the State University and Community College System of Tennessee; and Raymond C. Bowen in his Official Capacity as President of Shelby State Community College, Defendants–Appellees.

Supreme Court of Tennessee, at Jackson.

Sept. 20, 1993.

46

William D. Wilson, Jr., Memphis, for plaintiff-appellant.

Charles W. Burson, Atty. Gen. and Reporter, Jane W. Young, Asst. Atty. Gen., Steven A. Hart, Deputy Atty. Gen., Nashville, for defendants-appellees.

## *OPINION*

ANDERSON, Justice.

In this direct appeal, the Chancellor upheld the termination of a tenured faculty member at Shelby State Community College upon the statutory ground of "capricious disregard of accepted standards of professional conduct."[1] The appellant faculty member raises three issues for our review. The first is whether the charge was established by clear and convincing evidence. The second is whether there was a denial of due process because insufficient notice of the charge was given and because the statutory ground for discharge was too vague to inform the appellant of the nature of the offense. The final issue is whether the appellant's complaints about her supervisor's behavior were protected by the First Amendment, causing her termination to raise a federal constitutional issue.

We conclude that the charge was established by clear and convincing evidence as required by the statute. We have also determined that, as applied in this case, the standard of "capricious disregard of accepted standards of professional conduct" provided fair notice that the conduct charged put the appellant at risk of dismissal; that sufficient notice was given of the specific charges supporting the grounds for dismissal; and that, as a result, there is no due process violation. Finally, we hold that the First Amendment was not violated because the appellant's complaints were not matters of public concern. We, therefore, affirm the Chancellor's judgment.

## *BACKGROUND*

In 1976, the appellant, Betty J. Phillips, was promoted to assistant professor of speech and granted tenure by Shelby State Community College. In 1983, Anastasia Herin, chairperson of the Speech Department, began receiving complaints from students

1. Tenn.Code Ann. § 49-8-302(5) (1990).

and administrative personnel, as well as from other faculty and staff within the speech department, about Phillips' inappropriate behavior. Herin attempted to mediate the complaints by scheduling meetings between Phillips and the complainers, but eventually she abandoned the practice because Phillips' conduct made the meetings adversarial and unproductive.

Thereafter, Herin continued to receive complaints and to discuss them with Phillips, but the problems continued. Finally, in September of 1985, Herin met with Phillips and discussed eight areas in which Phillips had to improve her conduct or risk termination. A follow-up memo was sent to Phillips summarizing the areas of deficient conduct.

After the September meeting, Herin continued to receive complaints. Finally, Herin recommended that Phillips be dismissed, and as a result, on November 11, 1986, Phillips was notified by letter that because of the ongoing complaints and problems which had not been corrected despite the September 1985 meeting, termination proceedings were being instituted. Attached to the letter was documentation of the deficient behavior patterns, including the names of individuals complaining and a brief description of the complaint. In accordance with Board of Regents' policy, an informal hearing committee was convened to conduct an inquiry. The committee found justification for recommending termination for cause and listed ten reasons for that finding. Subsequently, on November 24, 1986, Phillips was informed by letter from the President of Shelby State that a formal hearing would be called to consider her proposed dismissal. According to the letter, grounds for dismissal included: (1) arbitrary treatment of students; (2) rude and discourteous behavior to peers; (3) rude and discourteous behavior to staff; and (4) insubordination to supervisors. All of the charges referred to State Board of Regents Policy 5:02:03:00, III. 15.e, which provides:

15. *Termination for Adequate Cause*

A faculty member with tenure or a faculty member on a tenure-track appointment prior to the end of the term appointment

may be terminated for adequate cause, which includes the following:

. . . .

e.  Capricious disregard of accepted standards of professional conduct.[2]

The formal hearing was conducted in early January of 1987, and the committee recommended dismissal, after making the following findings:

1.  Lack of compassion and insensitivity to student needs;
2.  Poor judgment and inflexibility in administering classroom policies;
3.  Lack of professional behavior towards peers, administrators, and staff;
4.  Inability to recognize personal weaknesses that affect communication and decisions;
5.  Insubordination to supervisors;
6.  Continuous increasing patterns of controversy with other professional areas at the college; and
7.  Unwillingness to modify behavior after being notified of problem areas and consequences.

A few days later, Phillips was informed by letter of her dismissal for "capricious disregard of accepted standards of professional conduct." In May of 1987, the President of Shelby State affirmed the decision of the formal hearing committee; and on January 29, 1988, the Chancellor of the Board of Regents sustained the dismissal.[3] Phillips then filed her petition for judicial review pursuant to Tenn.Code Ann. § 49–8–304(a) (1990). The administrative record of the formal hearing was filed and additional evidence was introduced at the *de novo* hearing in the Chancery Court. The Chancellor upheld Phillips' dismissal, finding that there was clear and convincing evidence in the record to support the charge of "capricious disregard of accepted standards of professional conduct," Tenn.Code Ann. § 49–8–303(a)(4) (1990), and that Phillips was afforded due process. Tenn.Code Ann. § 49–8–303(a) (1990).

## SUFFICIENCY OF THE EVIDENCE

■ Phillips argues that the charge of capricious disregard of accepted standards of professional conduct was not established by clear and convincing evidence as required by Tenn.Code Ann. § 49–8–303(a)(4) (1990). We disagree. There was overwhelming proof from students, staff, colleagues, and superiors about Phillips' inappropriate behavior. Phillips either denied the charges or attempted to justify her behavior. The Chancellor accredited the testimony of the defendants' witnesses. Considering the entire record, the evidence clearly and convincingly establishes the charge of "capricious disregard of accepted standards of professional conduct." This issue is without merit.

## DUE PROCESS

### A.  Void for Vagueness Challenge

■ Phillips argues her rights were violated under the due process clause of the Fourteenth Amendment of the U.S. Constitution and Article 1, § 8 of the Tennessee Constitution. Due process requirements apply to Phillips because of her property interest in her tenured faculty position. *See* Tenn.Code Ann. § 49–8–303(a) (1990); *Williams v. Pittard*, 604 S.W.2d 845, 849 (Tenn.1980); *Stout v. Whiteaker*, 379 F.Supp. 218, 221 (M.D.Tenn.1973).

Phillips first contends that her due process rights were violated because the charge of "capricious disregard of accepted standards of professional conduct" is so vague and general that it did not put her on notice that she could be dismissed for engaging in the conduct with which she was charged.

The "void for vagueness" doctrine developed as an aspect of due process jurisprudence in the context of criminal statutes because it was thought unfair to impose crimi-

---

2.  This policy simply tracks the language of Tenn. Code Ann. § 49–8–302(5) (1990), which provides: " 'Adequate Cause' for termination of faculty with tenure includes the following: ... (5) Capricious disregard of accepted standards of professional conduct."

3.  The decision to terminate Phillips was again sustained on January 2, 1991, after the case was remanded back to the Board of Regents by the Chancellor after the plaintiff complained that the original decision was tainted because matters outside the record were considered.

nal punishment on persons for conduct of which they had no notice. *See Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The idea of fairness is the basis of the doctrine, and its purpose is only to give "fair warning" of prohibited conduct. It is not designed to convert into a constitutional dilemma the practical difficulties inherent in drafting statutes. *Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

In 1974, the doctrine was extended to civil cases involving the discharge of public employees. *See Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). In that case, the Supreme Court upheld the dismissal of civil service employees based upon a statutory standard which provided "such cause as will promote the efficiency of the service." *Id.,* 416 U.S. at 159, 94 S.Ct. at 1647.

The *Arnett* court went further and articulated principles which provide guidance in the application of the vagueness doctrine. The court recognized that "there are limitations in the English language with respect to being both specific and manageably brief....," and said that a non-criminal statute is not unconstitutionally vague if the statute is set out in terms such that an ordinary person exercising ordinary common sense can sufficiently understand and comply. *Arnett,* 416 U.S. at 159, 94 S.Ct. at 1647; *see also Big Fork Min. Co. v. Tennessee Water Quality Control Bd.,* 620 S.W.2d 515, 519 (Tenn.App.1981). Continuing, the *Arnett* court also said that in using common sense, a public employee can be guided by "longstanding principles of employer-employee relationships, like those developed in the private sector." *Arnett,* 416 at 160, 94 S.Ct. at 1647.

▮ In addition to determining whether the standard is vague in a general sense, it is also necessary to examine the statute or standard to see whether it is vague as applied to the affected party. *See Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975).

Applying the foregoing principles, challenges to broad public employee dismissal standards on the grounds of vagueness have been rejected by a number of federal courts. For example, the First Circuit, in *Wishart v. McDonald,* 500 F.2d 1110, 1116 (1st Cir. 1974), upheld the discharge of a tenured sixth grade public school teacher, who had dressed, undressed and caressed a mannequin at his home in public view, under a regulation which required dismissal for "conduct unbecoming a teacher ... or other good cause." *Id.* at 1111. The regulation was upheld against a void for vagueness attack as applied to the teacher because his behavior was fairly identifiable by an ordinary person as conduct unbecoming a teacher. The court stated that "[t]he choice between specific rules and general standards is a difficult one; each has its unique costs. The real safeguard under a general standard is the common law adjudicatory process and judicial review." *Id.* at 1117; *see also Fowler v. Board of Educ.,* 819 F.2d 657, 664–65 (6th Cir.1987) (applying *Arnett* and *Wishart* in upholding dismissal standard of "conduct unbecoming a teacher").

Recently, the Third Circuit dealt with a similar general standard for discharge in *San Filippo v. Bongiovanni,* 961 F.2d 1125 (3rd Cir.1992). There, a tenured university professor was dismissed for failure to maintain "standards of sound scholarship and competent teaching" because of his inappropriate treatment of visiting Chinese scholars, his failure to comply with a superior's directive, and his dishonesty in dealing with payroll, federal grant funds, and applications for academic positions. *Id.* at 1137. The Third Circuit panel upheld the general standard against a void for vagueness attack, concluding that "a reasonable, ordinary person using his common sense and general knowledge of employer-employee relationships would have fair notice" that the conduct charged would put him at risk of dismissal under the regulation. *Id.; see also Garrett v. Mathews,* 474 F.Supp. 594 (N.D.Ala.1979), *aff'd,* 625 F.2d 658 (5th Cir.1980) (dismissal of a tenured university professor for insubordination under the general standard of "adequate cause" upheld against a void for vagueness attack).

While the standard under consideration in this case is broad and general, it is not unconstitutionally vague under either the state or federal constitution as applied to Phillips. She was counseled on a number of occasions about the conduct which eventually resulted in her dismissal. Moreover, she was later directly advised in a meeting and a follow up memo of the specific conduct that would result in dismissal for "capricious disregard of accepted standards of professional behavior" if not corrected. Finally, four specific areas of conduct justifying dismissal under the standard were provided by the letter notifying Phillips of the institution of termination proceedings. We agree with the Third Circuit that it is not unfair or unforeseeable for a tenured professor to be expected to behave professionally towards students and co-workers and to comply with the directives of a superior. *San Filippo,* 961 F.2d at 1137. Clearly, Phillips, using her common sense and general knowledge of employer-employee relationships, had fair notice that the conduct charged put her at risk of dismissal under the standard of "capricious disregard of accepted standards of professional conduct." Accordingly, we hold that the statutory standard as applied to Phillips does not violate due process.

### B. Inadequate Notice

Phillips next contends that she was denied due process because she was not informed of the specific details of each allegation of deficient conduct supporting the general statutory charge against her. A fundamental requirement of due process is notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *In Re Riggs,* 612 S.W.2d 461, 465 (Tenn.App.1980). The purpose of notice is to allow the affected party to marshal a case against the firing body. *Bignall v. North Idaho College,* 538 F.2d 243, 247 (9th Cir.1976).

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). In determining what process is due in a particular situation, three factors must be considered: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of the interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). Moreover, the component parts of the process are designed to reach a substantively correct result. Elaborate procedures at one stage may compensate for deficiencies at other stages. *Bignall,* 538 F.2d at 246.

In this case, Phillips received notice of the allegations supporting the charge against her in the documentation attached to the letter instituting termination proceedings. She was afforded the benefit of both an informal and formal hearing, in which further specific details of the allegations were developed. Finally, Phillips had a *de novo* hearing in the Chancery Court pursuant to Tenn.Code Ann. § 49-8-304 (1990), which was conducted in accordance with the procedures set forth in *Frye v. Memphis State Univ.,* 671 S.W.2d 467 (Tenn.1984).

We do not deem it necessary to decide whether the documentation attached to the letter was sufficiently specific to satisfy due process at that early stage of the procedure because we conclude that sufficient notice of the specific details of the allegations supporting the charge was provided, at least by the time of the *de novo* hearing in Chancery. *See Bignall,* 538 F.2d at 248 (although the notice prior to the hearing was defective, by the time of the trial *de novo* there was ample notice to satisfy due process). Given the availability of the hearing *de novo* in which Phillips was allowed to present further evidence to refute the specific details of allegations of which she may not have been aware at the time of the formal hearing, and the fact that there is no presumption of correctness afforded the decision of the administrative board, we conclude that the component parts of the process afforded a substantively correct result. *Cf. Cooper v. Williamson*

*County Bd. of Educ.*, 803 S.W.2d 200, 201 (Tenn.1990) (a hearing *de novo* in Chancery re-adjudicates the matter in a neutral forum, completely eliminating any arbitrariness or capriciousness in the board's decision, which is not afforded a presumption of correctness). We, therefore, hold that the claim of inadequate notice is without merit, and there was no violation of due process.

### FIRST AMENDMENT

■ Phillips' final argument is that she was terminated for complaining about her supervisor's behavior in violation of her First Amendment free speech rights.

■ While it is clearly established that a state may not discharge an employee for a reason that intrudes upon the employee's First Amendment rights to free speech, an employee asserting such a claim must first prove that the speech involved was constitutionally protected. *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). In determining whether a public employee has engaged in constitutionally protected speech, courts must employ the balancing test articulated in *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). A balance is struck "between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.*, 391 U.S. at 568, 88 S.Ct. at 1734–35.

■ Accordingly, in order for Phillips to succeed on her First Amendment claim, she must, as a threshold matter, demonstrate that her speech involved a matter of public concern which has been characterized as those matters as to which "free and open debate is vital to informed decision-making electorate." *Id.*, 391 U.S. at 572, 88 S.Ct. at 1736. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 1686, 75 L.Ed.2d 708 (1983).

Applying that analysis to this case, it is obvious that Phillips' complaints about her supervisor involved matters of personal interest rather than matters of public concern. For example, Phillips complained to Herin's supervisors about the results of her year-end evaluations and the manner in which Herin handled departmental matters. It is clear from the content, form, and context that these complaints did not involve issues mandating free and open debate. Accordingly, we find there has been no violation of the First Amendment.

### CONCLUSION

The evidence in the record clearly and convincingly establishes the charge of "capricious disregard of accepted standards of professional conduct" which is adequate cause for dismissal. The statutory charge, as applied in this case, was not void for vagueness, and notice sufficient to satisfy due process was provided. Finally, the First Amendment free speech claim is without merit because the speech involved did not deal with matters of public concern.

In light of the foregoing, the judgment of the Chancellor upholding the dismissal is affirmed. Costs of this appeal are taxed against the appellant Phillips.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.